**SO ORDERED: January 26, 2010.**



_____
**James K. Coachys
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JENNIFER LYNN ROBERTS, | ) | Case No. 08-15099-JKC-13 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| TIFFANY WOODS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 09-50267 |
| | ) | |
| JENNIFER LYNN ROBERTS, | ) | |
| | ) | |
| Defendant. | ) | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This matter comes before the Court on Plaintiff Tiffany Woods and Debtor/Defendant Jennifer Lynn Roberts' Cross Motions for Summary Judgment. Having reviewed the parties' respective submissions and considered the arguments presented at a hearing on December 17, 2009, the Court issues the following Findings of Fact and Conclusions of Law.

**Findings of Fact**

On October 3, 2004, Plaintiff Tiffany Woods ("Woods")–a police officer for the Indianapolis Metropolitan Police Department who at the time was working off-duty as a private security guard for an Indianapolis tavern–was involved in an altercation with Debtor/Defendant Jennifer Lynn Roberts ("Roberts") as Woods attempted to subdue and handcuff Roberts during a disturbance at the tavern. Roberts later plead guilty to Battery, as a Class D felony, and to Disorderly Conduct, as a Class B Misdemeanor, in a subsequent criminal proceeding. On September 30, 2006, Woods filed a personal injury action against Roberts. Prior to judgment being entered in that action, Roberts filed a Chapter 13 bankruptcy petition, in which she listed Woods as a creditor. Woods then filed a nondischargeability action against Woods pursuant to 11 U.S.C. § 1328(a)(4).

**Conclusions of Law**

Under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). With a motion for summary judgment, the burden rests on the moving party to demonstrate that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. at 2554. After the moving party demonstrates the absence of a genuine issue for trial, the responsibility shifts to the non-movant to "go beyond the pleadings" to cite evidence of a genuine factual dispute precluding summary judgment. *Id.* at 324, 106 S.Ct. at 2553. If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find

in its favor on a material question, then the court must enter summary judgment against it. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986)).

In her Complaint, Woods alleges that Roberts' indebtedness to her–for personal injuries allegedly sustained during the parties' 2004 altercation–are excepted from discharge pursuant to § 1328(a)(4).[1] That section excepts from discharge debts "for restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual or the death of an individual." Woods bears the burden of proving, by a preponderance of the evidence, that Roberts alleged indebtedness to her is excepted from discharge. *See Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Exceptions to discharge "are confined to those plainly expressed in the Code . . . and are narrowly construed in favor of the debtor." *DeKalb County Div. of Family & Children Servs. v. Platter (In re Platter)*, 140 F.3d 676, 680 (7th Cir.1998) (internal citations omitted).

On summary judgment, Woods argues that she is entitled to judgment in her favor as a matter of law based on Roberts' guilty plea for battery. In her cross motion for summary judgment, Roberts counters that she is entitled to judgment in her favor as a matter of law because there has yet to be any damages "awarded in a civil action" to Woods. In other words, Roberts insists that for a debt to be nondischargeable under § 1328(a)(4), there must be a pre-petition civil judgment for restitution or damages. In the alternative, Roberts argues that there is a genuine issue of material fact as to whether her conduct was "willful or malicious" for purposes of § 1328(a)(4).

---

[1] The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**The meaning of "awarded" as used in § 1328(a)(4)**

In 2005, Code § 1328 was amended to expand the types of debt that are nondischargeable under Chapter 13. In particular, the amendment added subsection (a)(4) which, as stated above, excepts from the Chapter 13 discharge debts "for restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to the individual or the death of an individual." Section 1328(a)(4) is similar, but not identical, to § 523(a)(6), which excepts from discharge debts for "willful and malicious injury by the debtor to another entity or to the property of another entity . . . ." Thus far, only a handful of courts have examined § 1328(a)(4). Most recently, the Bankruptcy Appellate Panel for the Ninth Circuit–in *Waag v. Permann (In re Permann)*, 418 B.R. 373 (9th Cir. BAP 2009)–offered a thorough analysis of § 1328(a)(4) and the only other published opinions discussing the provision: *Parsons v. Byrd (In re Byrd)*, 388 B.R. 875 (Bankr.C.D.Ill.2007), and *Buckley v. Taylor (In re Taylor)*, 388 B.R. 115 (Bankr.M.D.Pa.2008).[2]

As explained in *Permann*, the "diametrically opposed" courts in *Byrd* and *Taylor* "disagreed about the grammatical role of "awarded" in section 1328(a)(4), with the *Byrd* court treating it as a past tense verb and the *Taylor* court treating it as a past participle modifying "restitution" and "damages." *Permann*, 418 B.R. at 378. Further explaining *Byrd's* holding, *Permann* states:

> In *Byrd,* the court held that the "new section 1328(a)(4) *is worded in the past tense* . . . . Thus, a pre-petition award of restitution or damages for willful or malicious injury is a prerequisite to a finding of non-dischargeability under § 1328(a)(4)." *Byrd,* 388 B.R. at 877 (emphasis added), citing 8 *Collier on Bankruptcy* ¶ 1328.02[3][k] (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev.2006); and Keith M. Lundin, *Chapter 13 Bankruptcy* (3rd ed. 2000 & Supp.2006). The *Byrd*

---

[2] There is another case that discusses this issue, *In re Nuttall*, 2007 WL 128896 (BankrD.N.J.2007), that is cited and discussed in both *Byrd* and *Taylor*. *Nuthall*, however, was designated as "Not for Publication."

4

court also observed:

> "Section 1328(a)(4) is clearly worded differently than 11 U.S.C. § 523(a)(6), and, had Congress intended a different meaning, it could easily have worded § 1328(a)(4) to include restitution or damages as being non-dischargeable regardless of the entry of a judgment in a civil proceeding prior to the filing of a Chapter 13 bankruptcy petition. Given the plain meaning of § 1328(a)(4), the Court must find that the debt of the Plaintiff in the instant case is simply a contingent, unliquidated debt that is allowable in the Debtor's Chapter 13 bankruptcy, and not subject to exception from discharge."

*Id.* (internal footnotes omitted) (quoting *Byrd*, 388 B.R. at 877).

As *Permann* further explains, the bankruptcy court in *Taylor* rejected this analysis:

> "Whether Congress intended to distinguish between claims for personal injury that had been reduced to judgment before a petition is filed and claims that are disputed on the date of filing must be considered within the context of § 1328(a) as well as within the Bankruptcy Code as a whole. After analyzing this provision in the context of exceptions to discharge listed in § 1328(a) and the Code as a whole, I must disagree with the interpretation of § 1328(a)(4) that the *Nuttall* and *Byrd* courts find to be plain. *Nuttall and Byrd hold that because Congress used the word "awarded," it must have intended to provide one treatment for a judgment entered before a petition is filed and a different treatment for a claim that is disputed or contingent on the date of the petition. However, I believe this interpretation is erroneous and ignores the grammatical structure of § 1328(a)(4).*"

*Id.* at 378-79 (quoting *Taylor*, 388 B.R. at 119) (italics added)). *Permann* offers this additional summary of *Taylor's* reasoning:

> The *Taylor* court then examined the use of the word "awarded" both grammatically and in the context of the entire subsection. Unlike the *Byrd* and *Nuttall* courts, the court found that "awarded"-like the "included" in subsection 1328(a)(3)-was not being used as a past tense verb, but as a past participial phrase as an adjective modifying the nouns "restitution" and "damages." "A past participle is simply the form of the verb used in the phrase and does not suggest past action." *Taylor,* 388 B.R. at 119. As noted in one leading grammar treatise, both present and past participles "can be used for referring to past present or future time" and the past participle "signifies 'perfectiveness' or completion, *but is not restricted to past time.*" S. Chalker and E. Weiner, *The Oxford Dictionary of English Grammar* at pages 282 and 286-87 (1994) (emphasis added).

5

> As a past participle, "awarded" merely signifies "completion" or an entry of a restitution or damages award at the time of the determination of nondischargeability. *Taylor,* 388 B.R. at 119. Nothing in phraseology of section 1328(a)(4) requires, either implicitly or explicitly, entry of a prepetition judgment. *Id.* The contention by Debtor and the holding of *Byrd* that "awarded" is a past tense verb requiring a prepetition judgment is not convincing.

*Id.* at 379.

*Taylor* found support for its grammatical construction of § 1328(a)(4) in Code § 1328(a)(3), That provision provides that restitution and criminal fines "included in a sentence on the debtor's conviction of a crime" are not dischargeable. "If 'awarded' in § 1328(a)(4) requires that a judgment be entered before a petition is filed, the same logic would apply in § 1328(a)(3) when the phrase 'included in the debtor's sentence upon conviction of a crime is considered.' *Taylor*, 388 B.R. at 120. Significantly, however, the court was unable to find any reported cases in the sixteen years since § 1328(b)(3) was added to the Code holding that restitution or fines in a criminal proceeding are dischargeable simply because a debtor filed a bankruptcy petition before the criminal sentence was imposed. *Id.* As such, the court concluded that:

> [T]he words "included" and "awarded" do not function as past-tense verbs, but are past participles in phrases that define and limit the types of restitution, fines and damages that are non-dischargeable. Restitution and criminal fines are non-dischargeable under § 1328(a)(3) only if they are part of a debtor's sentence. Likewise, restitution and damages are non-dischargeable under § 1328(a)(4) only if they arise from a willful or malicious injury that causes personal injury or death. By reading "awarded" as part of a participial phrase, the word is not rendered mere surplusage, but part of a phrase that describes what types of "restitution" and "damage" awards are protected from discharge.

*Id.* at 119.

The *Taylor* court found even further support in two cases that interpreted a prior version of Code § 523(a)(9). *Id.* at 120 (citing *Young v. Rose (In re Rose)*, 86 B.R. 86 (Bankr.E.D.Mich.1988), and *Burch v. Tyler (In re Tyler)*, 98 B.R. 396 (Bankr.N.D.Ill.1989)). The 1984 version of that

6

exception to discharge applied to "any debt . . . to the extent that such debt arises from a judgment . . . entered in a court of record against a debtor wherein liability was . . . a result of the debtor's operation of a motor vehicle while illegally intoxicated." Both *Rose* and *Tyler* held that the judgment referred to in § 523(a)(9) could be obtained postpetiton. *See id*. The *Permann* court cites to yet another case–the Ninth Circuit's decision in *Stachhouse v. Hudson (In re Hudson)*, 859 F.2d 1418, 1420 (9th Cir.1988)–which reached the same conclusion. *See Permann*, 418 B.R. at 380. In the *Hudson* court's opinion, any other interpretation of § 523(a)(9) would lead to an absurd result and a "race" to the courthouse that "would give the debtor a clear advantage since it takes considerably longer to obtain a judgment than it does to file bankruptcy." *Id.* (quoting *Hudson*, 859 F.3d at 1420). As the Hudson court further noted, "adherence to a requirement that a creditor first obtain a 'judgment or consent decree' would effectively nullify the statute. Such an interpretation would merely encourage drunk drivers to file preemptively for bankruptcy once it became clear that they would be held civilly accountable for their actions." *Id*. (quoting *Hudson*, 859 F.2d at 1420).

"Based on the grammatical structure of § 1328(a)(4), the context in which it is used, and its policy and object," the *Permann* court ultimately agreed with *Taylor* that § 1328(a)(4) does not differentiate between a judgment entered prepetition and one entered postpetition." *Id.* at 381. This Court also so agrees. A construction which treats "awarded" as a past participle rather than a past tense verb is not only supported by the statute's plain language but also leads to a result that is consistent with the addition of the provision to § 1328. A contrary holding would essentially nullify § 1328(a)(4). This is hardly what Congress intended.

Accordingly, the Court concludes that Roberts' indebtedness to Woods is not dischargeable solely because Woods had not yet obtained a civil judgment for her alleged personal injuries.

7

Roberts' request for summary judgment on that issue is, therefore, denied.

### "Willful or Malicious"

Having determined that a prepetition judgment is not required under § 1328(a)(4), the Court next considers whether there is a genuine issue of material fact as to whether Roberts' conduct was "willful or malicious" as a matter of law. To analyze that question, the Court begins with the meaning of "willful."

There are no published opinions on the meaning of that term as it is used in § 1328(a)(4). There is, however, a significant body of case law as to its meaning as used in Code § 523(a)(6). In *Kawaauhau v. Geiger (In re Geiger)*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d (1998), the United States Supreme Curt answered the "pivotal question" of whether § 523(a)(6) covers "acts, done intentionally, that cause injury . . . or only acts done with the actual intent to cause injury." *Id.* at 61, 118 S.Ct. at 977. In answering that question, the Court concluded that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." *Id.* (emphasis in the original). In other words, there must be an "actual intent to cause injury." *See id*.

While this may seem like a fairly straightforward holding, it has been suggested that "Geiger seems to have created almost as much consternation as it set out to resolve." *ABF, Inc. v. Russell (In re Russell)*, 262 B.R. 449, 452 (Bankr.N.D.Ind.2001). This is in part because:

> [T]he Court never said what "willful" is; only what it is not-it is not negligence, recklessness or a breach of contract. *Geiger,* 523 U.S. at 61-62, 118 S.Ct. at 977. Although the Court observed that the language of § 523(a)(6) "triggers in the lawyer's mind the category 'intentional torts,' " *Geiger,* 523 U.S. at 61, 118 S.Ct. at 977, this recognition of a logical association is not the same as saying the two are one and the same. *In re Miller*, 156 F.3d 598, 604 (5th Cir.1998). Furthermore, while *Geiger* clearly requires a "deliberate or intentional injury," *Geiger,* 523 U.S. at 61, 118 S.Ct. at 977, the Court never explained what is necessary to satisfy this

requirement. *In re Baldwin*, 245 B.R. 131, 135 (9th Cir. BAP 2000).

*Id.* As a result, courts have grappled with *Geiger* in an attempt to divine its meaning. For instance, the Fifth Circuit Court of Appeals in *Miller*, cited above, identified at least three possible readings of the Supreme Court's insistence on actual intent to cause injury: "The standard might be met by any tort generally classified as an intentional tort, by any tort substantially certain to result in injury, or any tort motivated by a desire to inflict injury." *Miller*, 156 F.3d at 603.

The meaning of "willful" is especially critical in the case at hand. On summary judgment, Woods emphasizes that Roberts pled guilty to Battery, as a Class D felony, and further admitted to "battery" in responding to Woods' Second Request for Admissions. As defined by the Indiana law, however, battery does not require that the defendant *intend* the injury. Indiana Code § 35-42-2-1 provides in relevant part that:

> (a) a person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor. However, the offense is:
> (1) a Class A misdemeanor if:
> (A) it results in bodily injury to any other person;
>
> *****
> (2) a Class D felony if it results in bodily injury to:
> (A) a law enforcement officer or a person summoned and directed by a law enforcement officer while the officer is engaged in the execution of the officer's official duty . . . .

Thus, while Roberts' plea conclusively establishes that Roberts' actions were intentional, they do not necessarily compel the Court to conclude that Roberts intended the injuries they caused.

The fact that battery is an "intentional tort" under Indiana law does not compel a different conclusion. *See Wallace v. Rosen*, 765 N.E.2d 192, 196 (Ind.Ct.App.2002) ("Battery is an intentional tort.") (citing *Boruff v. Jesseph*, 576 N.E.2d 1287, 1300 (Ind.Ct.App.1991)). *Miller* is

9

again instructive on this point:

> Merely because a tort is classified as intentional does not mean that any injury caused by the tortfeasor is willful. This case illustrates the distinction, since misappropriation of proprietary information and misuse of trade secrets are wrongful regardless of whether injury is substantially certain to occur. *See, e.g., Restatement (Third) Unfair Competition* § 40(b) cmt. c ("[A]ny exploitation of the trade secret that is likely to result in injury to the trade secret owner *or* enrichment to the defendant is a 'use' under this section."). Misuse of trade secrets is not precisely like stealing funds from a till, because the tortfeasor's gain is not inevitably a loss to the legal owner of the secret.

*Miller*, 156 F.3d at 604. Similarly, battery–at least as a misdemeanor under Indiana law–does not require that there be *any* injury. Clearly, then, the mere classification of a battery as an "intentional tort" is not, in itself, conclusive for purposes of § 523(a)(6).

What state of mind, then, is required under *Geiger*? In answering that question, the Fifth Circuit "equated intending actual injury to a situation in which 'the debtor intentionally took action that necessarily caused, or was substantially certain to cause, the injury.'" *Id.* at 604 (quoting *Corley v. Delaney (In re Delaney)*, 97 F.3d 800, 802 (5th Cir.1996)). In other words, an objective intent to injure is sufficient. The Restatement (Second) of Torts § 8A–a comment of which the Supreme Court favorably cites to in *Geiger*–provides further support for that conclusion in stating that "intent" "denotes that the actor desires to cause consequences of his act, or that he believes the consequences are substantially certain to result from it."[3]

The bankruptcy court in *Russell*, however, rejected *Miller's* reliance on objective intent and, instead, offered this analysis:

> The creditor's true injury occurs on an abstract level. It is the debtor's invasion of

---

[3] According to *Miller*, "a subjective motive to injure would alternatively be sufficient to trigger § 523(a)(6)," as "it would seem peculiar to deem an action causing injury not 'willful' when the tortfeasor's action was in fact motivated by a desire to cause injury. " *Id.*

10

> the creditor's legally protected right. The court should focus on this injury, as opposed to the resulting damage, when it asks whether the injury was intentional. When it does so, the answer will usually be relatively obvious because the debtor's action is the injury. *For example, in a case involving assault and battery, the true injury is not the creditor's broken jaw, but rather, the unconsented to touching that produced the broken jaw.* Consequently, the question to ask is not whether the debtor intended to break the creditor's jaw, but instead, whether the debtor intended to hit the creditor. In defamation cases, the true injury is not the damage to the creditor's reputation; it is the publication of falsehoods about the creditor that led to the damaged reputation. Consequently, the proper question is not whether the debtor intended to injure the creditor's reputation, but instead, whether the debtor intended to publish the defamatory remarks. Similarly, in the conversion of collateral scenario, the true injury is not that the creditor's debt goes unpaid. The true injury is that the creditor's collateral was wrongly or improperly disposed of and that the proceeds were used for purposes other than payment of the obligation that property secured. . . . Consequently, the proper question is not whether the debtor intended that its secured creditor would go unpaid. Instead, the question to ask is whether the debtor intended to improperly use the creditor's collateral and/or its proceeds for purposes other than the payment of the debt that property secured. If so, there is an intentional injury.

*Russell*, 262 B.R. at 453-54 (internal citations omitted) (italics added).

At least in the case at hand, the Court need not choose which of the two standards is a better articulation of "actual intent to cause injury." As explained below, the Court concludes that Roberts' actions under either standard resulted in a "willful injury" for purposes of § 1328(a)(4) as a matter of law.

Beyond Roberts' guilty plea for Battery and her admission that she battered Woods, the only other evidence before the Court bearing on Roberts' state of mind is testimony from Woods' deposition. In it, she states:

> Then I yelled, stop. [Roberts] said no, and kept going, and then I gained control of her, and we were on the ground.
> \*\*\*\*\*
> I was trying to get her in handcuffs, and then I was finally able to get her in one handcuff. She was pushing, flailing, bucking me off her back, pushing me off of her, and just out of control. And I'm trying to hold onto her because if she gets away I'll have to run again, and chase her some more. So I got one cuff on her right arm,

11

> yeah, her right arm, and then the left one she kept curling underneath her body and she kept spinning underneath her body and she kept spinning around and pushing me off. I had to get back on her, and this went on for several minutes, at least three minutes. And then I was just cranking on her left arm to get it out from underneath her body with my arm, nonstop, nonstop as she's still fighting and resisting, bucking me and laying on her stomach. I'm trying to hold her head down, to keep her down to the ground so I can keep her – trying to get control of her left arm, and I'm still waiting for my backup to get there.

Woods alleges that she sustained injuries to her shoulder as a result of Roberts' above-described conduct. Clearly, by her guilty plea, Roberts has admitted to the "touching" that caused those alleged injuries. Under *Russell's* logic, then, the Court concludes that Roberts' alleged indebtedness to Woods arose from a "willful injury."[4]

The undisputed evidence also satisfies *Miller's* "substantially certain to cause injury" standard. In resisting arrest by "pushing, flailing, bucking," "fighting" and holding her arm underneath her body to avoid being handcuffed, Roberts should have known that injury to Woods was "substantially certain" to occur, as it is reasonable to assume that a police officer will take whatever action is necessary, short of excessive force, to make an arrest. Roberts failed to offer any evidence on summary judgment that would support a different conclusion.

## Conclusion

Based on the foregoing, the Court concludes, first, that Roberts' alleged indebtedness to Woods is not dischargeable simply because Woods did not obtain civil judgment prior to the filing of Roberts' bankruptcy petition and, second, that Roberts alleged indebtedness to Woods was caused

---

[4] The Court does have some reservations about *Russell's* logic, at least to the extent it applies to § 523(a)(6). In stating that "the action is the injury," *Russell* seems to contradict *Geiger's* holding that "nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." That said, the Court notes that § 1328(a)(4)'s distinct wording–"for restitution, or damages, awarded . . . as a result of willful or malicious injury by the debtor that caused personal injury"–arguably supports *Russell's* logic in that the willful or malicious injury appears to be distinct from the personal injury for which damages were awarded.

by a "willful injury" such that any judgment awarded Woods for her personal injuries is excepted from discharge as a matter of law.[5] Based on those conclusions, the Court grants summary judgment in favor of Woods and against Roberts. A judgment order consistent with this opinion will be entered contemporaneously herewith.

###

Distribution:

Daniel Townsend McAfee
Fred L. Cline
Mark S. Zuckerberg
UST
Chapter 13 Trustee

---

[5] Having concluded that the Roberts' indebtedness to Woods arose as a result of a "willful injury," the Court need not examine whether such injury was also "malicious." Section 1328(a)(4) requires a "willful *or* malicious" injury in contrast to § 523(a)(6), which requires a "willful *and* malicious" injury.